Jane DOE, et al.

v.

**SANTA FE INDEPENDENT SCHOOL DISTRICT, et al.**

Civil Action No. G–95–176.

United States District Court,
S.D. Texas,
Galveston Division.

July 22, 1996.

Anthony P. Griffin, Galveston, TX, for plaintiff.

Kelly Frels, Houston, TX, Lisa Ann Brown, Bracewell & Patterson, Houston, TX, for defendants.

## ORDER

KENT, District Judge.

Three adults and three minors commenced this action to challenge the constitutionality of various religious practices occurring in their public school system. The Court has previously determined that the Santa Fe Independent School District is liable to Plaintiffs for past violations of the First Amendment prohibition against governmental establishment of religion. *See* Order entered on June 4, 1996. By agreement of the parties, all claims against the individual Defendants were dismissed without prejudice in a bench ruling on July 17, 1996, leaving the Santa Fe Independent School District as the only remaining Defendant. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) (explaining that claims brought against individuals strictly in their official capacities are, in substance, claims against the entity employing those individuals). A trial to assess damages is currently set for July 25–26, 1996.

Plaintiffs have been permitted to proceed thus far in the litigation using fictitious names for the purpose of concealing their identities from the general public. In addition, a Protective Order issued by the Court on May 10, 1996, requires the identities of Plaintiffs to be kept confidential exclusively among the attorneys of record. These prophylactic measures, however, are of limited usefulness at an open trial on damages, because the anonymity of Plaintiffs would be destroyed if members of their community in attendance were to recognize them by sight. The Court, therefore, must decide the extent to which the public's right of access to civil trials may be compromised to protect the privacy interests of the various Plaintiffs.

The substantive protection provided by the public right of access to civil trials depends, of course, upon the source of the right. *E.g., Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988) (explaining that the First Amendment would provide more stringent guarantees than a common-law right of access). Prior decisions of the United States Supreme Court establish that, at a minimum, the common law recognizes a public right of access to civil trials. *See, e.g., Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947) (holding that a publisher, a writer, and a reporter could not be held in contempt for printing accounts of proceedings in a civil trial, because "[a] trial is a public event [and] [w]hat transpires

in the court room is public property"). Whether the public right of access to civil trials is also constitutionally grounded, however, presents a more difficult question.

In the context of criminal trials, the Supreme Court recently established that the First Amendment to the United States Constitution guarantees the public a right of access to judicial proceedings in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). *See id.* at 580–81, 100 S.Ct. at 2829–30 (plurality opinion); *id.* at 585, 100 S.Ct. at 2831–32 (Brennan, J., concurring); *id.* at 599, 100 S.Ct. at 2839–40 (Stewart, J., concurring); *id.* at 604 (Blackmun, J., concurring); *see also Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982) ("The Court's recent decision in *Richmond Newspapers* firmly established for the first time that the press and general public have a constitutional right of access to criminal trials."). Although a majority opinion was not issued in *Richmond Newspapers,* the Court has consistently characterized that decision as relying upon the historical presumption of openness in criminal proceedings, and the importance of public scrutiny to our system of self-government. *See, e.g., Globe Newspaper,* 457 U.S. at 605–06, 102 S.Ct. at 2619–20 (discussing the holding of *Richmond Newspapers* and its underlying rationale in light of the various opinions issued in that case). These considerations have subsequently led the Court to extend the First Amendment right of access to other judicial proceedings which are integral to criminal prosecution. *Press–Enterprise Co. v. Superior Ct. of Cal.* ("*Press–Enterprise II* "), 478 U.S. 1, 13, 106 S.Ct. 2735, 2742–43 (1986) (holding that the constitutional guarantee of openness applies to preliminary hearings for criminal cases as conducted in California); *Press–Enterprise Co. v. Superior Ct. of Cal.* ("*Press–Enterprise I*"), 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (holding that the constitutional guarantee of openness applies to voir dire proceedings in which jurors are selected for a criminal trial); *see also id.* at 516, 104 S.Ct. at 827 (Stevens, J., concurring) (clarifying that the Court's holding is grounded in the First Amendment); *Waller v. Geor-*

*gia,* 467 U.S. 39, 44–45, 104 S.Ct. 2210, 2214–15, 81 L.Ed.2d 31 (1984) (same). The Supreme Court has not, however, decided whether a public right of access to civil trials exists under the First Amendment.

The United States Court of Appeals for the Fifth Circuit has never expressly analyzed the applicability of *Richmond Newspapers* and its progeny to civil trials, but the Court did provide considerable insight on this issue in *Doe v. Stegall,* 653 F.2d 180 (5th. Cir. Unit A Aug. 1981). In *Stegall,* the Fifth Circuit was confronted with whether the plaintiffs could proceed under fictitious names in an action challenging the constitutionality of various religious activities occurring in Mississippi public schools. *Id.* at 181. In resolving that issue, the Court cited *Richmond Newspapers* as the sole basis for its determination that the First Amendment guarantee of "public scrutiny of judicial proceedings" is implicated by the plaintiffs' failure to disclose their identities in the complaint. *Id.* at 185. Although the Fifth Circuit did not openly consider whether that constitutional guarantee applies to trials in civil cases, a footnote immediately following the citation of *Richmond Newspapers* clearly indicates that the First Amendment right recognized by the Fifth Circuit derives from the general applicability of *Richmond Newspapers* to civil trials:

> The *Richmond Newspapers* case addressed the closure of a criminal trial. The [plurality] opinion by Chief Justice Burger expressly left open the question of the public's right to attend civil trials, but noted that "historically both civil and criminal trials have been presumptively open."

*Id.* at 185 n. 10. As suggested by this footnote, the Fifth Circuit appears to have reasoned implicitly that the public enjoys a First Amendment right to learn the identities of the plaintiffs because, under the rationale of *Richmond Newspapers,* the First Amendment guarantees a public right of access to civil trials. *Id.* at 185 & n. 10.

Other United States Courts of Appeals have more explicitly held that *Richmond Newspapers* applies to civil trials. The most comprehensive analysis of the issue is found

in the Third Circuit opinion of *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir.1984). In *Publicker*, the Third Circuit defined its task under *Richmond Newspapers* as "to review the English and American legal authorities to determine whether they reveal a corresponding presumption of openness inhering in the civil trial which 'plays a particularly significant role in the functioning of the judicial process and the government as a whole.'" *Id.* at 1068 (citing *Globe Newspaper*). After surveying the pertinent authorities in considerable detail, the Third Circuit concluded that the First Amendment embraces the public right of access to civil trials. *Id.* at 1068–70. The Sixth Circuit employed a similar approach to arrive at the same conclusion in *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). *Id.* at 1177–81 (vacating the district court's seal of documents filed in a civil action due to the common law and First Amendment right of the public of access to judicial proceedings). The Second Circuit and the Seventh Circuit later endorsed the reasoning and result of *Publicker* and *Brown & Williamson Tobacco*, respectively. *See Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16, 23 (2d Cir.1984) ("[W]e agree with the Third Circuit ... that the First Amendment does secure to the public and to the press a right of access to civil proceedings in accordance with the dicta of the Justices in *Richmond Newspapers*...."), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3478, 87 L.Ed.2d 614 (1985); *In re Continental Ill. Secs. Litigation*, 732 F.2d 1302, 1308 (7th Cir.1984) ("[W]e agree with the Sixth Circuit that the policy reasons for granting public access to criminal proceedings apply to civil cases as well."). No other Circuit Court has reached a contrary result.[1]

■ This Court, in light of the Fifth Circuit's reasoning in *Stegall* and the holdings reached by other Circuit Courts, concludes that the right of the public to attend civil trials is grounded in the First Amendment as well as the common law. *See also* Jeanne L. Nowaczewski, Comment, *The First Amendment Right of Access to Civil Trials After Globe Newspaper Co. v. Superior Court*, 51 U.Chi.L.Rev. 286 (1984) (arguing for a First Amendment right of access to civil trials). Accordingly, the trial on damages in the instant case must remain generally open to the public unless "denial [of the constitutional right of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper*, 457 U.S. at 607, 102 S.Ct. at 2620 (applying this strict scrutiny test to conclude that statutorily closing all specified sexual-offense trials during the testimony of a minor is not narrowly tailored to meet the compelling governmental interest of protecting a minor's mental and physical welfare); *see also, e.g., Publicker*, 733 F.2d at 1070

---

1. The Seventh Circuit also appears to agree under an independent analysis that the public right of access to judicial proceedings is grounded in the First Amendment. *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994) (stating that "[t]hough its original inception was in the realm of criminal proceedings, the right of access [to judicial proceedings] has since been extended to civil proceedings because the contribution of publicity is just as important there," as a basis for concluding that "the right of access belonging to the press and the general public also has a First Amendment basis"). The Eighth Circuit has held that the First Amendment establishes a right to contempt proceedings, considered to be a "hybrid" of criminal and civil proceedings, but that Court has not determined whether the public's constitutional right of access applies generally to civil trials. *Webster Groves Sch. Dist. v. Pulitzer Publishing Co.*, 898 F.2d 1371, 1374 (8th Cir.1990) (discussing *In re Iowa Freedom of Information Council*, 724 F.2d 658 (8th Cir.1983)). The Eleventh Circuit has applied the First Amendment right of access to judicial proceedings in a civil action, but the Court limited its holding to civil trials "which pertain to the release or incarceration of prisoners and the conditions of their confinement." *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir.1983). The remaining Circuit Courts do not appear to have addressed the applicability of *Richmond Newspapers* and its progeny to civil trials. *E.g., United States v. Three Juveniles*, 61 F.3d 86, 88 n. 2 (1st Cir.1995) ("[T]his Circuit has never decided whether the First Amendment mandates ... a general right of access [by the public to civil trials]."), *cert. denied*, — U.S. —, 116 S.Ct. 1564, 134 L.Ed.2d 664 (1996); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 n. 6 (9th Cir.1995) ("Neither the Supreme Court nor this Circuit has ruled on the issue [of whether the First Amendment guarantees the public access to judicial proceedings] in the context of a civil trial or records in civil cases.").

(applying the strict scrutiny test of *Globe Newspaper* to determine the constitutionality of closure of public access to civil trials). In other words, the "presumption of openness may be overcome" at trial in the instant case "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to preserve that interest." *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824 (stating the test for closure in the context of criminal proceedings); *see also, e.g., Publicker,* 733 F.2d at 1071 (endorsing the test of *Press–Enterprise I* in the context of civil proceedings).

This Court is unaware of any Circuit Court opinion that squarely addresses whether closure of a civil trial is warranted by the facts of the case at bar. The most highly instructive decision to this inquiry, primarily due to its factual similarity to the instant case, is the Fifth Circuit's holding in *Stegall.* As previously indicated, the issue before the Fifth Circuit in *Stegall* was whether to allow two minors to proceed anonymously with their action challenging the constitutionality of certain religious events conducted at public schools. *Stegall,* 653 F.2d at 181. The Court began its analysis by noting that the First Amendment is directly implicated by the complaint's failure to disclose the identities of the plaintiffs. *Id.* at 185 (citing *Richmond Newspapers* ); *see also supra* (discussing the reasoning of *Stegall* ). The Court then proceeded with "a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally embedded presumption of openness in judicial proceedings." *Id.* at 186. The Court emphasized the importance of three considerations to its holding. *Id.* First, the complaint challenged governmental activity in such a manner as to reveal the plaintiffs' religious beliefs, which "is perhaps the quintessentially private matter." *Id.* Second, the plaintiffs demonstrated a possibility of social ostracization and violence through, most notably, submission of newspaper articles revealing militant religious attitudes. *Id.* at 182 & n. 6, 186. Third, the plaintiffs were children and therefore particularly vulnerable due to their age. *Id.* at 186. The combination of these three factors led the

Fifth Circuit ultimately to conclude that the plaintiffs must be permitted to proceed anonymously, because, in the context considered, their privacy interests outweighed the public's First Amendment right of access to judicial proceedings. *Id.* ("We conclude that the almost universal practice of disclosure must give way in this case to the privacy interests at stake.").

Based on the reasoning of *Stegall,* this Court finds that closure of the trial on damages is justified to the extent necessary to protect the anonymity of the minor Plaintiffs. The minor Plaintiffs have made revelations concerning their religious beliefs through their constitutional challenge of governmental action. In addition, the newspaper articles and other exhibits submitted by Plaintiffs, considered together, demonstrate the possibility of social ostracization and violence due to militant religious attitudes. Finally, the youth of the minor Plaintiffs makes them particularly vulnerable. Because the combination of these factors justified an intrusion upon the public's First Amendment right of access in *Stegall, see supra,* this Court finds that the same is true in the instant case. Although *Stegall* specifically addressed anonymity within the confines of the complaint, *see Stegall,* 653 F.2d at 185–86, it would seem odd if the Fifth Circuit were subsequently to destroy the anonymity it permitted by allowing members of the plaintiffs' community visibly to identify them at trial. This Court recognizes that *Stegall* considered closure at trial a more serious impairment of the public's ability to scrutinize governmental activities than anonymity in the complaint, *see id.* at 185, but it appears that the same First Amendment right of public access to judicial proceedings is implicated during either stage of litigation. *See id.* at 185 (indicating that *Richmond Newspapers* supports the conclusion that the First Amendment is implicated by the plaintiffs' failure to reveal their identity in the complaint); *see also Richmond Newspapers,* 448 U.S. at 558, 100 S.Ct. at 2818 ("The narrow question presented in this case is whether the right of the public and press to attend criminal trials is guaranteed under the United States Constitution.") (plurality opinion).

In any event, this concern can largely be alleviated by permitting, throughout the trial, the attendance of all persons possessing legitimate credentials of employment with an organized media organization.[2] Despite the distinctions between *Stegall* and the instant case, therefore, this Court remains convinced that closure to the extent necessary to protect the privacy of the minor Plaintiffs is justified under the reasoning of that opinion. *Cf. Globe Newspaper*, 457 U.S. at 607 & n. 19, 102 S.Ct. at 2620 & n. 19 (noting that "safeguarding the physical and psychological well-being of a minor" may constitute a compelling governmental interest which justifies closure of criminal proceedings).

■ The Court does not, however, conclude that closure of the trial is justified to protect the anonymity of the adult Plaintiffs. Although the Fifth Circuit expressly declined in *Stegall* to advance "a hard and fast formula" for determining whether complete openness at trial may be curtailed, *see Stegall*, 653 F.2d at 186, this Court finds that the minor status of certain Plaintiffs is crucial to this determination given the totality of the circumstances present in the instant case. Adults are simply not as vulnerable as schoolchildren to social and physical intimidation or violence centered around events at public schools, especially considering the availability of legal measures to address any illegal behavior. The Court is accordingly unwilling, based on the current record, to deny the public its First Amendment right of access to trial in order to protect the privacy interests of the adult Plaintiffs.[3]

Having determined that closure is permissible only to the extent necessary to protect the anonymity of the minor Plaintiffs, the Court hereby issues the following Orders pertaining to the July 25–26, 1996, trial on damages, which are narrowly tailored to protect the privacy interests justifying closure:

(1) The trial shall remain open at all times to persons possessing legitimate credentials of employment with an organized media organization;

(2) The trial shall remain generally open to the public when the minor Plaintiffs are not testifying;

(3) While a minor Plaintiff is testifying, the trial will be closed to members of the general public not possessing legitimate credentials of employment with an organized media organization. Persons employed by or otherwise associated with the Santa Fe Independent School District shall be treated exactly as all other members of the general public in this regard, except as expressly authorized below;

(4) The trial shall remain open at all times to the parties of interest still remaining in this case and their attorneys of record. The Santa Fe Independent School District may appear through the current superintendent and/or president of the school board of trustees, who may remain throughout all proceedings in their official capacities as Defendant's representatives. **THESE INDIVIDUALS ARE ORDERED NOT TO REVEAL PLAINTIFFS' IDENTITIES TO ANYONE FOR ANY REASON WHATSOEVER, UNDER THIS AND PRIOR ORDERS OF THE COURT, AND UNDER THE HARSH PENALTIES OF CONTEMPT OF COURT AS DESCRIBED BELOW;**

(5) The trial shall remain open at all times to the Court's personal staff, the designated court reporter, and specified security personnel, as permitted by the Court;

(6) Plaintiffs shall be referred to exclusively through use of fictitious names throughout all proceedings;

(7) During the examination of witnesses, counsel are prohibited from asking questions designed solely to elicit the identities of Plaintiffs;

---

**2.** The media would admittedly be free to publish descriptions or other identifying characteristics of the minor Plaintiffs, but the Court sincerely hopes that the media would feel equitably estopped from doing so in the interests of the children.

**3.** Although identification of the adult Plaintiffs, who are the parents or siblings of the minor Plaintiffs, virtually amounts to identification of the minor Plaintiffs, the Court is constrained by the First Amendment to tailor any restrictions on public access to proceedings as narrowly as possible.

(8) The Protective Order issued on May 10, 1996, remains in full force and effect in all of its particulars; and

(9) **FAILURE OF ANY INDIVIDUAL TO ABIDE BY THE EXACT TERMS OF THIS AND PRIOR ORDERS SHALL SUBJECT THAT PERSON TO A FINDING OF CRIMINAL CONTEMPT, THE PENALTY FOR WHICH MAY INCLUDE INCARCERATION.**

The Court retains jurisdiction in perpetuity to enforce the terms of this Order.

**IT IS SO ORDERED.**