DOES 1–7, Plaintiffs,

v.

**ROUND ROCK INDEPENDENT SCHOOL DISTRICT, Jesus H. Chavez, Defendants.**

No. A–07–CA–708–SS.

United States District Court,
W.D. Texas,
Austin Division.

Dec. 20, 2007.

Alexander Joseph Luchenitser, Ayesha N. Khan, Heather L. Weaver, Jessica L. Wolland, Americans United for Separation of Church and State, Washington, DC, Robert Franklin Andrews, Attorney at Law, Austin, TX, for Plaintiffs.

Mary Schaerdel Dietz, Sarah R. Holland, Fulbright & Jaworski, L.L.P., Austin, TX, for Defendants.

### *ORDER*

SAM SPARKS, District Judge.

BE IT REMEMBERED on the 9th day of December 2007 the Court held a hearing on all pending motions in the above-styled cause, and the parties appeared through counsel. Before the Court were the parties' Joint Stipulation re: Dismissal of Jesus Chavez in his Individual Capacity [22], Defendant Round Rock Independent School District's Amended Motion to Dismiss [14], Plaintiffs' Response thereto [23], Defendant's Reply [31, 34], and Plaintiffs' Surreply [35], as well as Defendants' Motion to Stay Discovery [12] and Plaintiffs' Response thereto [21], and the parties' Joint Proposed Scheduling Order [30].[1]

---

1. The following motions were also pending before the Court, but were mooted by the stipulation of dismissal regarding Dr. Chavez or the filing of a subsequent pleading: Defendant Jesus Chavez's Motion to Dismiss [6] and Amended Motion to Dismiss [13] (mooted by stipulation), Defendant Round Rock Independent School District's Motion to Dismiss [5] (mooted by filing of Amended Motion to Dismiss), and Defendant Round Rock Independent School District's Motion to Extend Time to File Reply in support of its Motion to Dismiss [28] (mooted by timely reply).

The Court GRANTS the parties' joint request to dismiss all claims against Dr. Jesus Chavez in his individual capacity.

Before addressing the discovery and scheduling issues in the case, the Court will evaluate the merits of the School District's Motion to Dismiss. After considering the Motion, Response, Reply, and Surreply, as well as the arguments of counsel at the hearing, the Court invited all parties to submit supplemental letter briefing on the issues of mootness, ripeness, and nominal damages within ten days of the November 9, 2007 hearing. All parties submitted letter briefs,[2] which the Court will consider in addition to the materials listed above, the applicable law, and the case file as a whole.

### Background

The Plaintiffs challenge Defendant Round Rock Independent School District (RRISD)'s policy of allowing the graduating class at each of the four RRISD high schools to vote on whether to have a student say a prayer at the high school's commencement ceremony. Complaint ¶ 2. Plaintiffs challenge both the presentation of a graduation prayer and the school district's policy of conducting a "majoritarian election on religion." *Id.* at ¶ 1.

In 2007 RRISD held votes at all four district high schools. The majority at all four schools did not vote in favor of prayer at graduation, either voting against it or abstaining. *Id.* at ¶ 30. After protests from some students and parents at a May 17, 2007 School Board meeting, *id.* at ¶ 31, RRISD decided to re-count the votes, ignoring abstentions. *Id.* at ¶ 33. When students who had not voted were not included in the tally, there was a majority in favor of a graduation prayer at three of the four RRISD schools. *Id.* at ¶ 33–34. Westwood High was the only school that did not have more votes in favor of the prayer than against it when the votes excluded abstaining students. *Id.* After further protests from students and parents who wanted a graduation prayer at Westwood High, RRISD asked students at Westwood High to vote again at the end of a mandatory graduation rehearsal on May 23, 2007. *Id.* at ¶ 34–35. The majority voted against a graduation prayer, and no prayer was said at the 2007 Westwood High graduation. *Id.* at ¶ 35.

A student-led prayer was offered at each of the other three RRISD high school graduation ceremonies in 2007. *Id.* at ¶ 36. The students' drafts of each prayer were reviewed and heavily edited by RRISD staff including each school's principal, Assistant Superintendent Rosena Malone, Deputy Superintendent Toni Garcia, and RRISD's attorney. *Id.* at ¶ 3843. Plaintiffs contend RRISD officials "revis[ed] at least one of the prayers so significantly that its content must be almost exclusively attributed to District officials." *Id.* at ¶ 53.

Plaintiffs sue anonymously to avoid harassment from the community. *Id.* ¶ 15. Each of the Plaintiffs seeks injunctive and declaratory relief and an award of nominal damages. Plaintiffs fall generally into two

**2.** Counsel submitted briefing on behalf of Dr. Chavez in his individual capacity. The Court will consider Dr. Chavez's letter brief notwithstanding the fact that this Order confirms the dismissal of all claims against him in his individual capacity. At the November 9, 2007 hearing, the Court invited all parties to submit supplemental briefing on the issues of mootness and ripeness. Dr. Chavez was still a party to the suit in his individual capacity at the time his letter brief was submitted. Furthermore, the Court has discretion to consider "amicus" briefing where "the proffered information is 'timely and useful' or otherwise necessary to the administration of justice." *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F.Supp.2d 920, 927–28 (S.D.Tex. 2007) (citing *Waste Management of Pa. v. City of York*, 162 F.R.D. 34, 36–37 (M.D.Pa.1995)).

groups: those who are offended by the graduation prayer policy but who have not attended one of the challenged graduation ceremonies, and those who attended a graduation ceremony in May 2007.

In the first category, Does 1 and 2 are the parents of two children who attend RRISD schools. *Id.* at ¶ 10. One child is in high school and the other "will be entering high school in the near future." *Id.* The Complaint contains no allegation regarding either student's current grade level. Does 1 and 2 sue on behalf of themselves and their children. *Id.* There is no allegation that Does 1 and 2 or any of her children attended or wished to attend a graduation ceremony in 2007.

Doe 5 is the parent of a RRISD high school graduate and a minor child who entered a RRISD high school in Fall of 2007. *Id.* at ¶ 12. The Complaint does not specify when the older child graduated, nor does it allege any prayer was held at the child's graduation ceremony. Doe 5 sues individually and on behalf of the minor child (but not on behalf of the graduate). *Id.* The claims asserted by Doe 5 and the minor child arise out of their objections to the graduation prayer policy generally, not out of their attendance at a specific graduation ceremony. *Id.*

Doe 6 is the parent of "several." RRISD students who are not yet in high school. *Id.* at ¶ 13. Doe 6 sues individually and on behalf of these minor children. *Id.* The complaint contains no allegation about the children's grade level. There is no allegation that Doe 6 or any of her children attended or wished to attend a graduation ceremony in 2007.

Does 1, 2, 5, and 6 each assert the existence RRISD's graduation prayer policy "coercively expose[s] [Plaintiffs] to religious exercises that are publicly spon-

sored.. and impede[s] the ability of [the Doe parents] to direct and control the religious upbringing of their children...." *Id.* at ¶ 10. Their complaints are based on the existence of the graduation policy itself, not on their attendance at any particular graduation ceremony.

In contrast, Does 3, 4, and 7 attended a graduation ceremony in May of 2007. Does 3 and 4 are the parents of two children who attend or attended RRISD schools. *Id.* at ¶ 11. One child graduated in 2007 from a RRISD high school at which a vote on graduation prayer was conducted and a student prayer was presented at the ceremony. *Id.* The other child is currently attending a RRISD high school; the Complaint does not state this child's grade level. *Id.* Does 3 and 4 sue on behalf of themselves and their children, alleging the family was "put ... to the coercive choice of foregoing attendance at a seminal event in the child's educational life or attending a graduation ceremony that includes a prayer that does not reflect their beliefs and that makes them feel like outcasts." *Id.*

Doe 7 graduated from Westwood High in 2007 and has a sibling currently attending an RRISD high school (at an unspecified grade level). *Id.* at ¶ 14. A legal adult, Doe 7 sues individually, asserting exposure to multiple votes on whether to have a graduation prayer violated his[3] constitutional rights, notwithstanding the fact that no prayer was ultimately conducted at the graduation ceremony Doe 7 attended. *Id.* Doe 7 further asserts he plans to attend the graduation of his sibling at some future date, and will be forced to choose between foregoing that event or being subjected to graduation prayers at that time. *Id.*

---

**3.** The Complaint does not specify the gender of any of the Doe plaintiffs. The Court will use a generic "he" pronoun when referring to each Doe plaintiff as an individual.

## Analysis

Defendants move to dismiss all of Plaintiffs' claims for lack of standing. In the alternative, defendants assert the claims related to the 2007 graduation ceremony have been mooted by intervening legislation, while any claims related to future graduation ceremonies are not yet ripe. Finally, Defendants argue that, to the extent plaintiffs have standing and have asserted justiciable claims, they have failed to state any claim for which relief can be granted under Fifth Circuit law.

## I. Standing

 To have standing to sue, a plaintiff must show that he personally suffered some actual or threatened injury, that the injury is fairly traceable to the defendant's challenged action, and that the relief that plaintiff has requested will redress the injury. *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir.2007); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir.2006)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The injury "must be actual or imminent, and not abstract, conjectural, or hypothetical." *FEC v. Akins*, 524 U.S. 11, 20, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). The Fifth Circuit strictly enforces the standing requirement as an essential element of subject matter jurisdiction. *See Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 498 (5th Cir. July 25, 2007) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)).

For purposes of determining standing to sue, the Court must examine each plaintiff's claims individually. *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496–497 (5th Cir.2007) ("Constitutional standing requires that the plaintiff *personally* suffered some actual or threatened injury ...") (emphasis added). Each of the plaintiffs, however, falls into one of four rough categories:

1. one legally adult student who graduated in a 2007 RRISD graduation ceremony;

2. parents suing as next friends of children who graduated in a 2007 RRISD graduation ceremony;

3. parents suing individually and as next friends of children who attended the 2007 RISD graduation ceremony of a family member; or

4. parents suing individually and as next friends of children who attend RRISD but have not graduated from a 2007 RRISD graduation ceremony or attended a graduation ceremony for a family member.

As each plaintiff within these groups shares the same characteristics material to the issue of standing, the Court will frame its analysis in terms of these groupings in order to avoid needless repetition.

### a. Standing based on direct injury

 The student and the parents suing on behalf of students who actually participated in the voting/graduation exercises in 2007 have standing to sue based on their allegation that forced participation in the voting and the invocation injured their right to be free from state-established religious practices. *See Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467(1992). A school cannot "persuade or compel a student to participate in a religious exercise." *Id.*

 Additionally, Does 3 and 4 assert direct injury on behalf of themselves and their minor children who did not *graduate* in 2007, but who have older siblings who graduated in 2007. The parents and the younger children attended their siblings' graduation and were thereby personally subjected to the invocation policy, as were

their parents. The family members' direct exposure to the invocations at the 2007 ceremony confers standing to sue. *See, e.g. Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (residents of community in which a creche was displayed in a park had standing to sue); *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (residents of a community where a creche and a menorah were displayed in the County Courthouse and just outside the City–County Building had standing to sue). *Compare Tangipahoa Parish*, 494 F.3d at 497 (no standing to sue where the record did not establish plaintiffs were actually present for invocations at school board meetings); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485–87, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (where plaintiffs learned of challenged conduct through the media and did not live in or near the alleged offending state, the Court held there was no standing for a "psychological consequence presumably produced by observation of conduct with which one disagrees").

■The remaining Does sue as next friends on behalf of children who attend RRISD and may someday graduate from an RRISD school, but who did not attend the 2007 graduation ceremonies. These families claim they are injured by the atmosphere of majoritarian religious coercion allegedly created by the existence of the voting policy. The Fifth Circuit, however, has recently stated this type of injury is insufficient to confer Article III standing: "Standing to challenge invocations as violating the Establishment Clause has not previously been based solely on injury arising from mere abstract knowledge that invocations were said." *Tangipahoa Parish*, 494 F.3d at 497. Absent some evidence that the parents or the students participated in or were directly exposed to the voting and invocation policy, the mere knowledge of its occurrence is not enough to confer standing. *Id. See also Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 284 (5th Cir.1996) ("fear of exposure to student-initiated prayers in the future is simply not injury"); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir.1995) (no standing to sue on behalf of child who "was never a member of any class to which the Gideons distributed Bibles.")

**b. Taxpayer Standing**

■ In the alternative, Does 1–6 assert they have standing as municipal taxpayers. To establish municipal taxpayer standing, Plaintiffs must show that they pay taxes to the relevant entity, and that public funds are expended on the allegedly unconstitutional activity. *See Duncanville*, 70 F.3d at 408. Plaintiffs assert they pay property taxes that go to RRISD, and the school used taxpayer funds to purchase supplies used to conduct the voting (such as paper and ink for ballots); to pay the salaries of RRISD employees who conducted the voting, counted the votes, and "heavily edited" the prayers; and to secure legal advice on the prayer policy and selected prayers from RRISD's attorney.

RRISD counters that none of these are expenses incurred solely for the purpose of conducting a vote on graduation prayers or presenting the prayers at the ceremony. The ballots were made up from supplies on hand. RRISD states the teachers and administrators did not spend significant time away from their other duties to conduct the voting or edit the prayers. RRISD further asserts its staff would have edited and its attorney would have reviewed student graduation presentations whether they were secular or religious.

■ Taxpayer standing requires some evidence that "tax revenues are expended

on the disputed practice." *Duncanville,* 70 F.3d at 408. The relevant caselaw suggests this requires a showing that the challenged activity was "supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school." *Ward v. Santa Fe Indep. Sch. Dist,* 393 F.3d 599, 607 (5th Cir.2004) (citing *Doremus v. Board of Educ. of Hawthorne,* 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952)). In other words, the use of supplies already "on hand" does not support taxpayer standing. *See, e.g. Duncanville,* 70 F.3d at 408 (5th Cir.1995) (no taxpayer standing where "there is no evidence that the school district bought the table especially for the Bible distribution or that the table has been set aside for this sole purpose.")

 The use of a municipal employee's time, however, may be an expenditure sufficient to support taxpayer standing. *See, e.g. Williams v. Huff,* 52 S.W.3d 171, 182–83 (Tex.2001) (citing *Marsh v. Chambers,* 463 U.S. 783, 786 n. 4, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), *Harvey v. Cobb County,* 811 F.Supp. 669, 675–76 (N.D.Ga. 1993)), To support taxpayer standing, the time spent by a state employee on a challenged practice must be paid, not volunteer, and must be more than de minimis. *See, e.g. Henderson v. Stalder,* 287 F.3d 374, 380–81 (5th Cir.2002) (no taxpayer standing where state employees volunteered to administer "Choose Life" license plate program); *ACLU–NJ,* 246 F.3d at 263–64 (taxpayers did not have standing because even if holiday display was erected by municipal employees, taxpayers produced no proof of more than de minimis expenditure by municipality); *Alabama Freethought Ass'n v. Moore,* 893 F.Supp. 1522, 1542–43 (N.D.Ala.1995) (proof that janitors occasionally dust plaque, or that a judge spends time uttering prayer, is insufficient for standing).

 The taxpayers argue their tax dollars were used to pay RRISD' personnel, including its attorney, to plan and administer the graduation voting program and edit the prayers. As RRISD points out, however, the school's staff and attorney would have been involved in planning and reviewing the graduation presentations in any event, and Plaintiffs have not established the "additional" time spent editing the religious content of the students' presentations or conducting votes on the invocation was more than de minimis. *See, e.g. Doe v. Madison Sch. Dist. No. 321,* 177 F.3d 789, 794 (9th Cir.1999) ("ordinary costs of graduation that the school would pay whether or not the ceremony included a prayer" are not sufficient to establish taxpayer standing). Nor have Plaintiffs established school personnel spent more than de minimis time conducting the voting or counting the ballots. Accordingly, Does 1–6 have not established taxpayer standing.

Because Does 1, 2, 5, and 6 have failed to establish standing to sue as taxpayers or as injured parties, their claims must be dismissed for lack of jurisdiction. Does 3, 4, their children, and Doe 7 have established standing to sue for alleged direct constitutional injuries based on their participation in the 2007 graduation ceremonies.

## II. Mootness and Ripeness

RRISD argues the challenged policy has been mooted by recent legislation. Specifically, HB 3678, enacted by the Texas Legislature in May of 2007, creates a limited public forum at graduation ceremonies and prohibits discrimination against a student speaker's "voluntary expression of a religious viewpoint, if any, on an otherwise permissible subject" in that context. Am. Mot. Dism. Ex. A. The statute is mandatory for all public school graduation ceremo-

nies at which students will speak and does not provide for any senior class election or discretion over the contents of student speech: in the limited public forum. *Id.* HB 3678 became part of the Texas Education Code in the 2007–2008 school year and will apply to the upcoming 2008 graduation ceremonies. TEX. EDUC.CODE § 25.152.

Plaintiffs argue the plain language of the new statute does not require RRISD to eliminate its current policy of voting on whether to include a student invocation at graduation ceremonies. Rather, Plaintiffs argue, HB 3678 mandates a limited public forum in addition to whatever other student speakers the school district chooses to allow. Plaintiffs allege RRISD could hold elections on the content of those additional student presentations, in accordance with its current policy, without violating HB 3678.

Defendants assert there is no "current policy" of voting on student invocations. According to Defendants, the School District's only official reference to voting on invocations is in a RRISD "Legal" policy statement which merely states the school's perception of the governing law but is not an "adopted policy" of the school board. This statement is, at best, disingenuous. Whether it has been formally adopted by the district or not, the district held the voting procedure out as a policy in the 2007 school year, and has issued statements to the public such as "All policies [both "Legal" and "Local" designations] have been adopted formally by the "Board of Trustees," and "To fully understand the policy regarding Board meetings, therefore, the manual user should consider both the (Legal) and the (Local) policies togeth-

er." Surreply at 2–4. These facts establish there is a "current policy" of voting on graduation invocations, which may or may not have been modified by HB 3678.

 The key question, then, is whether the policy of holding a student vote on invocations is incompatible with HB 3678. Ordinarily, "statutory changes that discontinue a challenged practice are ... enough to render a case moot." *Fantasy Ranch, Inc. v. City of Arlington,* 459 F.3d 546, 564 (5th Cir.2006). But if the statute and the RRISD policy are not mutually exclusive, the school district can only establish mootness if it can show that there is no reasonable likelihood students will be subjected to the challenged invocation voting practice in the future. *Gates v. Cook,* 376 F.3d 323, 337 (5th Cir.2004); *Duncanville,* 994 F.2d at 166.

The text of HB 3678, codified at Tex. Educ.Code § 25.152,[4] states in relevant part:

(a) To ensure that the school district does not discriminate against a student's publicly stated voluntary expression of a religious viewpoint, if any, and to eliminate any actual or perceived affirmative school sponsorship or attribution to the district of a student's expression of a religious viewpoint, if any, a school district shall adopt a policy, which must include the establishment of a limited public forum for student speakers at all school events at which a student is to publicly speak. The policy regarding the limited public forum must also require the school district to:

(1) provide the forum in a manner that does not discriminate against a student's voluntary expression of a re-

---

**4.** The Court doubts whether the new statute will do much to resolve the issue of prayers at graduations, but expects the new legislation will be quite effective at keeping attorneys in fees for the foreseeable future. The facts of this particular case, however, do not require the Court to pass any judgment on the constitutionality or reasonableness of the new statute, and the Court therefore declines to do so.

ligious viewpoint, if any, on an otherwise permissible subject;

(2) provide a method, based on neutral criteria, for the selection of student speakers at school events and graduation ceremonies;

(3) ensure that a student speaker does not engage in obscene, vulgar, offensively lewd, or indecent speech; and

(4) state, in writing, orally, or both, that the student's speech does not reflect the endorsement, sponsorship, position, or expression of the district.

(b) The school district disclaimer required by Subsection (a)(4) must be provided at all graduation ceremonies. The school district must also continue to provide the disclaimer at any other event in which a student speaks publicly for as long as a need exists to dispel confusion over the district's nonsponsorship of the student's speech.

(c) Student expression on an otherwise permissible subject may not be excluded from the limited public forum because the subject is expressed from a religious viewpoint.

Plaintiffs assert the statute does not explicitly state the "limited public forum" is to be the only avenue for student speech at graduation events, and therefore the school district could hold a vote on whether to allow a student invocation in addition to whatever expression takes place in the limited public forum. This reading of the statute completely ignores its stated purpose: "to eliminate any actual or perceived affirmative school sponsorship or attribution to the district of a student's expression of a religious viewpoint." *Id.* Particularly in light of the requirements that student speakers be selected based on neutral criteria and a disclaimer regarding "the school's nonsponsorship of the student's speech" be presented, the intent of the statute seems clear: at school events

that include student presentations, school districts must neither sponsor nor censor voluntary student expression on the basis of its religious content.

"It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, —— U.S. ——, ——, 127 S.Ct. 2518, 2534, 168 L.Ed.2d 467 (2007) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)). Although the statute does not explicitly forbid the specific practice of school-sponsored voting on student invocations, such a practice is inconsistent with the clearly expressed purpose of the statute. Therefore, as Defendants argue, an injunction requiring the School District to refrain from holding future votes on student invocations would be nothing more than an injunction to "follow the law." In the absence of some allegedly imminent violation of the law, such an injunction is inappropriate and Plaintiffs' request for injunctive relief is moot. *See, e.g., L.A. v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Plaintiffs assert prayers are likely to be offered in the 2008 and/or 2009 graduation ceremonies under the new legislation, and seek what is essentially a stay of this case until March of 2009 to "wait and see" whether constitutional violations occur at these future graduations. While Plaintiffs couch their argument in terms of "conservation of judicial resources," this Court finds its resources are better expended on present disputes rather than future dilemmas. It is neither prudent nor within this Court's power to preside over an abstract argument that may someday become justiciable. *See, e.g. Valley Forge Christian College v. Americans*

*United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("The requirement of actual injury .... tends to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.") It is impossible to determine what will happen at the May 2008 and 2009 graduations at this juncture, but in light of Tex. Educ.Code § 25.152, it is quite reasonable to suppose that the elections which occurred in May 2007 will not happen again. Accordingly, the Plaintiffs' request for injunctive and declaratory relief is moot.

## III. Nominal Damages

Though Plaintiffs have stated no currently justiciable claim for injunctive or declaratory relief, each has specifically stated a claim for nominal damages related to their participation in the 2007 graduations. A properly stated claim for nominal damages survives even when intervening changes in the law have mooted claims for injunctive or declaratory relief. *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 602 (5th Cir.2004). Though a suit for nominal damages against a state is not cognizable under § 1983 and can be barred under the Eleventh Amendment, *See Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), the school district is subject to § 1983 liability and has no Eleventh Amendment immunity. *Ward*, 393 F.3d at 602; *see also San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 284 (Tex. 1996).

The Court nevertheless has significant doubts that Plaintiffs' claim for nominal damages is taken in good faith. To put it bluntly, the few Plaintiffs who have standing to sue could and should have filed suit when their claims for substantive relief were ripe. The school district's prayer policy was well publicized and hotly debated before the 2007 graduations. Plaintiffs sat through not one, but two votes on school prayer and the graduation ceremonies themselves without filing a complaint. This lawsuit was not filed until three full months after the last challenged graduation ceremony took place. In short, the claim for nominal damages was included in the original complaint for the sole purpose of rendering justiciable Plaintiffs' request for an advisory opinion on school prayer at future graduations.

Nominal damages were not intended to thwart the doctrines of mootness and ripeness, but to allow relief for serious, yet intangible infringements of constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 258–59, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question....") In the instant case, Plaintiffs have stated in open court that they seek to litigate policy questions that will not arise until 2008 or 2009 at the earliest. None of the Plaintiffs specifically alleges he or she will even be involved in the 2008 or 2009 ceremonies. The conduct of this litigation makes clear that Plaintiffs are suing chiefly to "vindicat[e] ... the value interests of concerned bystanders," *Valley Forge*, 454 U.S. at 473, 102 S.Ct. 752 (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). The Court is not inclined to give an advisory opinion so thinly veiled by the concept of nominal damages. Nevertheless, to the extent Plaintiffs actually seek compensation for constitutional harms alleged to have resulted from the 2007 elections and graduation prayers, their claims remain justicia-

ble and they are entitled to an evaluation on the merits.[5]

## IV. Failure to State a Claim

Defendants argue that, although Plaintiffs may have a justiciable claim for nominal damages, it is not a claim for which relief can be granted under Fifth Circuit law. Specifically, the Fifth Circuit expressly approved the practice of allowing students to vote on whether to have a student-led graduation prayer in *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 969 (5th Cir.1992). *Clear Creek* has since been interpreted as creating a "tightly circumscribed safe harbor" regarding student elections on school prayer in the specific context of graduation ceremonies. *Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 818 (5th Cir.1999).

Plaintiffs assert the Supreme Court "impliedly" overruled *Clear Creek* in *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 305, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000), which rejected the policy of having student votes on "invocations" before football games. The *Santa Fe* Court reasoned that voting on invocations was inappropriate because:

> such a majoritarian policy "does not lessen the offense or isolation to the objectors. At best it narrows their number, at worst increases their sense of isolation and affront." Similarly, while Santa Fe's majoritarian election might ensure that most of the students are represented, it does nothing to protect the minority; indeed, it likely serves to intensify their offense.

*Id.* (quoting *Lee v. Weisman*, 505 U.S. 577, 594, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)).

Though this holding seems to expressly reject the concept of student majoritarian elections on school prayer, Defendants assert the Supreme Court deliberately refused to apply its holding to the "special" and limited context of high school graduations. Defendants base this argument on the fact that *Santa Fe*, at the trial court level, involved a challenge to both football invocations and graduation invocations. *Doe v. Santa Fe Indep. Sch. Dist.*, 933 F.Supp. 647 (S.D.Tex.1996). The Supreme Court granted cert only to resolve the issue of invocations at *football games*, and did not review graduation prayers. Plaintiffs counter that the issue of graduation prayer was not actually before the Supreme Court in *Santa Fe* because the *Santa Fe* plaintiffs sought certiorari only on the football prayer issue. *See Santa Fe Indep. Sch. Dist v. Doe*, 1999 WL 33611365 (1999). The Santa Fe defendants, however, did seek limited review of the graduation prayer issue, which the Court denied. *Id.*

Defendants argue the Supreme Court therefore impliedly approved the specific graduation policy at issue below, which allowed students to vote on whether to have a student-led, nonsectarian, nonproselytizing invocation at graduation ceremonies. However, the Court's denial of certiorari means only that it "accepts, without approving or disapproving, the Court of Appeals' conclusion...." *Missouri v. Jenkins*, 495 U.S. 33, 53, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) (citing *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 215, 67 S.Ct. 752, 91 L.Ed. 849 (1947)). Thus, the Court's silence on the issue cannot be taken for anything more than it is—silence. *See, e.g. United States v. Grier*, 449 F.3d 558, 567 (3d Cir.2006) ("The ab-

---

**5.** With respect to Doe 7, the Court questions what damages, nominal or otherwise, could possibly have come from participating in two elections where the Plaintiff's point of view was ultimately successful. This is, however, a factual question beyond the scope of the motion to dismiss.

sence of discussion of the Fifth Amendment is not, as the dissent seems to believe, an implicit recognition that the right to proof beyond a reasonable doubt applies at sentencing. Rather, *it simply reflects the limited scope of the grant of certiorari.*") It is the Court's articulated reasoning that has precedential value.

In its opinion, the *Santa Fe* Court acknowledges *Clear Creek's* existence as Fifth Circuit precedent, but does not express approval of *Clear Creek's* holding or reasoning distinguishing graduation exercises as an appropriate setting for a student vote on school prayer. *See Santa Fe,* 530 U.S. at 299–301, 120 S.Ct. 2266. In fact, to the extent the *Santa Fe* court recognizes differences between a graduation ceremony and a football game, it is to note that a graduation ceremony involves a more coercive atmosphere than an athletic event. *Santa Fe,* 530 U.S. at 311, 120 S.Ct. 2266 ("the informal pressure to attend an athletic event is not as strong as a senior's desire to attend her own graduation ceremony.") The *Santa Fe* opinion does not explicitly overrule *Clear Creek,* but it also does not explicitly approve any "graduation-prayer exception" to its clear rule against majoritarian elections on student prayer at school events.

Neither the Fifth Circuit nor any other district court within the Fifth Circuit has issued an opinion on whether *Santa Fe* limited or overruled *Clear Creek.* However, the Court finds the procedural history of the Eleventh Circuit case, *Adler v. Duval County School Board,* 250 F.3d 1330 (11th Cir.2001), instructive on the issue. *Adler* involved a challenge to a county school board's facially-neutral policy permitting high school seniors to vote upon the delivery by a student of a graduation speech of the student's own choosing (which often had religious overtones). The Eleventh Circuit previously ruled, en banc, that this policy did not violate the Estab-

lishment Clause. *Adler v. Duval County Sch. Bd.,* 206 F.3d 1070 (11th Cir.2000). The Supreme Court, however, granted certiorari and issued the following brief opinion: "The judgment is vacated and the case is remanded to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of *Santa Fe Independent School District v. Doe,* 530 U.S. 290, 120 S.Ct. 2266 (2000)." *Adler v. Duval County Sch. Bd.,* 531 U.S. 801, 121 S.Ct. 31, 148 L.Ed.2d 3 (2000).

This terse opinion is what is known as a "GVR." The acronym "GVR" refers to the Supreme court's practice of granting certiorari, vacating, and remanding for further consideration in light of some intervening development. *Carter v. Johnson,* 131 F.3d 452, 457 (5th Cir.1997). The practice is thoroughly explained in *Lawrence v. Chater,* 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (per curiam). Essentially, a GVR disposition is appropriate where intervening developments, such as a new Supreme Court decision, call into question the lower court's ruling. *Id.* at 167–68, 116 S.Ct. 604. The GVR is not the equivalent of a reversal on the merits, however. Rather, the Court remands for the sake of judicial economy—so that the lower court can more fully consider the issue with the wisdom of the intervening development. *Id.; see also id.* at 174, 116 S.Ct. 604 ("Indeed, it is precisely because we are uncertain, without undertaking plenary analysis, of the legal impact of a new development, especially one, such as the present, which the lower court has had no opportunity to consider, that we GVR."). Accordingly, the Supreme Court's GVR in *Adler* is not a statement about *how* the *Santa Fe* holding applies to elections on prayer at graduation ceremonies. Nevertheless, the GVR is a clear statement from the Supreme Court that the *Santa Fe* decision *does* apply to this situation. In other words, the Supreme Court has not

impliedly exempted graduations from the reach and reasoning of *Santa Fe*, as Defendants argue.

On remand, the Eleventh Circuit exhaustively considered the effect of *Santa Fe* on the practice of voting on student invocations at high school graduation ceremonies, reasoning that "[t]he Supreme Court did not rule that an election process itself is always incompatible with the Establishment Clause. Nor did it rule that a student elected to speak to the student body is necessarily a state-sponsored speaker." *Adler v. Duval County School Board*, 250 F.3d 1330 (11th Cir.2001). In fact, the *Adler* Court on remand upheld the voting policy at issue, finding that a content-neutral vote on student speakers at graduation ceremonies did not violate the Establishment Clause because it did not involve a majoritarian election on prayer or state content review of any religious message. *Id.* at 1342.

In contrast, the Eleventh Circuit reasoned, the voting at issue in *Santa Fe* was unconstitutional because (1) it was "a vote up-or-down on prayer," not a content-neutral vote on whether to have a student speaker, *id.* at 1338; (2) the school district retained significant control over the content of the message, *id.* at 1341; and (3) "the final version of the Santa Fe policy was found to be nothing more than the product of repeated efforts by the school district to inject prayer and other religious activities into school events ...." *id.* at 1340.

■ A careful reading of *Santa Fe* leads this Court to approve the *Adler* court's interpretation of the decision. *See, e.g. Santa Fe*, 530 U.S. at 318, 120 S.Ct. 2266. ("The policy is invalid on its face because it [1] establishes an improper majoritarian election on religion, and [2] unquestionably has the purpose and [3] creates the perception of encouraging the delivery of prayer at a series of im-

portant school events.") Although the Court is confident *Adler* correctly identifies the salient points of *Santa Fe*, that does not necessarily mean this Court has any authority to declare *Clear Creek* a dead letter. It is well-settled law that "if a precedent ... has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the binding authority] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). Thus, even if this Court is certain the Fifth Circuit *will* declare *Clear Creek* no longer good law at the first opportunity, this Court cannot put those words in the panel's mouth.

■ On the other hand, it is equally well-settled law that a district court may recognize when a precedent has been "explicitly or implicitly overruled by a subsequent Supreme Court decision." *Enriquez v. Union Pac. R.R. Co.*, No. 5:03–CV–174, 2004 U.S. Dist. LEXIS 28989, 35–36 (E.D.Tex. Jan. 30, 2004) (citing *U.S. v. Short*, 181 F.3d 620, 624 (5th Cir.1999)). In that circumstance, "the District Judge is free to disregard circuit precedent that is contrary to the rule pronounced by the court possessing final authority to decide that particular question of law." *EEOC v. Sidley Austin Brown & Wood LLP*, 406 F.Supp.2d 991, 996 (D.Ill.2005), aff'd by *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir.2006). As the *Sidley* court explained, "the question to ask is whether the holding (not the rationale) of the Supreme Court can be squared with the holding (not the rationale) of the Court of Appeals." *Id.*

In this case, the holding of the *Santa Fe* opinion is that "[t]he policy is invalid on its face because it establishes an improper majoritarian election on religion, and unquestionably has the purpose and creates the perception of encouraging the delivery of prayer at a series of important school events." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 317, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000). The holding of *Clear Creek* (as described by the *Santa Fe* majority) is that "student-led prayer that was approved by a vote of the students and was nonsectarian and nonproselytizing was permissible at high school graduation ceremonies." 530 U.S. at 299, 120 S.Ct. 2266 (citing *Clear Creek*, 977 F.2d 963). A "prayer that was approved by a vote of the students" is indistinguishable from a "majoritarian election on religion," which *Santa Fe* explicitly holds "improper." Accordingly, this Court recognizes that *Santa Fe* overruled *Clear Creek* to the extent *Clear Creek* approves a majoritarian election on religion.

■ To the extent the precedent set by the Supreme Court in *Santa Fe* is inconsistent with existing Fifth Circuit precedent as described in *Clear Creek*, it is undisputed that *Santa Fe* controls. Because Plaintiffs have alleged RRISD impermissibly attempted to inject religious activities into the 2007 graduation ceremonies by mandating a student majoritarian election on prayer, Plaintiffs have stated a cognizable claim for relief and Defendants' motion to dismiss must be denied.

■ Ordinarily, a claim for nominal damages "recognizes the importance to organized society that [constitutional] rights be scrupulously observed" by making violations of such rights actionable despite the lack of compensable damage to plaintiffs. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In a case such as this one, however, where intervening legislation has addressed and

mooted Plaintiffs' substantive claims for injunctive relief, the Court has serious concerns that litigating the sole remaining issue of a few dollars in nominal damages is a poor use of the time and resources of all concerned, including the RRISD taxpayers who are footing the bill. Therefore, the Court reminds the parties that, if this case is concluded by litigation, the Court will review the settlement offers made by each side. If it appears that this litigation has been prolonged by unreasonable negotiation conduct on the part of either Plaintiffs or Defendants, that party shall have the honor of paying for all parties' reasonable costs and fees incurred at their apparent insistence.

### Conclusion

In accordance with the foregoing,

IT IS ORDERED that the Joint Stipulation re: Dismissal of Jesus Chavez in his individual capacity [22] is ACCEPTED;

IT IS FURTHER ORDERED that the FOLLOWING MOTIONS are DISMISSED AS MOOT: Defendants' Motion to Stay Discovery [12]; Defendant Jesus Chavez's Motion to Dismiss [6] and Amended Motion to Dismiss [13]; Defendant Round Rock Independent School District's Motion to Dismiss [5]; and Defendant Round Rock Independent School District's Motion to Extend Time to File Reply in support of its Motion to Dismiss [28].

IT IS FURTHER ORDERED that Defendant Round Rock Independent School District's Amended Motion to Dismiss [14] is GRANTED in PART and DENIED in PART. All claims brought by Does 1, 2, 5, and 6 are DISMISSED for lack of subject matter jurisdiction. The claims for injunctive and declaratory relief brought by Does 3, 4, and 7 are DISMISSED as MOOT. However, the claims for nominal damages brought by Does 3, 4, and 7 are

both justiciable and legally cognizable, and the Motion to Dismiss is DENIED as to those claims.

IT IS FINALLY ORDERED that the parties' Joint Proposed Scheduling Order [30] is REJECTED. The stated purpose of the order proposed by the parties is to keep this case pending until March of 2009 in order to address possible future constitutional violations at the 2008 and 2009 RRISD graduation ceremonies. As explained in this Order, these prospective disputes are not ripe for review, and this Court has no intention of "running the meter" on the case until these issues become reviewable. This case will not remain pending until March of 2009, but will proceed to trial at the pace of the Court's regular docket. Accordingly, the parties are instructed to confer and submit a second proposed scheduling order with this limitation in mind.